UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| JOSEPH BARNARD HINES, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL NO. 2:13-CV-120 |
| § | |
| CASTILLO, *et al*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND RECOMMENDATION**
**TO DISMISS CERTAIN CLAIMS AND TO RETAIN CASE**

Plaintiff Joseph Barnard Hines is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID"), and he is currently confined at the Connally Unit in Kenedy, Texas. On April 26, 2013, plaintiff filed a motion for preliminary injunction and/or temporary restraining order ("TRO") alleging that certain McConnell Unit officers and officials had conspired to assault, and did assault him, in retaliation for his allegedly assaulting a female officer.[1] (D.E. 1). Thereafter, he was transferred to the Connally Unit where, plaintiff contends, prison officials have continued to retaliate against him by, *inter alia*, denying him access to the law library, tampering with his mail, and denying him medical care. Id.

On May 23, 2013, plaintiff's claims against the Connally Unit defendants were severed and transferred. (D.E. 9). Concerning his claims against the McConnell Unit

---

[1] Plaintiff's TRO motion was construed as a civil rights complaint pursuant to 42 U.S.C. § 1983.

officers and officials, plaintiff alleged excessive force and retaliation against the following defendants: (1) Sergeant Castillo; (2) Warden Currie; (3) Assistant Warden Monroe; (4) Assistant Warden Barber; and (5) – (10) Officer John Doe No. 1 – Officer John Doe No. 6. (D.E. 1 at 3).

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. See 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff's action is subject to screening regardless whether he prepays the entire filing fee or proceeds as a pauper. Ruiz v. United States, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam), cert. denied, 527 U.S. 1041 (1999). Plaintiff's *pro se* complaint must be read indulgently, Haines v. Kerner, 404 U.S. 519, 520 (1972), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, Denton v. Hernandez, 504 U.S. 25, 33 (1992).

Applying these standards, it is respectfully recommended that plaintiff's Eighth Amendment excessive force claim against Sergeant Castillo be retained and service ordered on this defendant in his individual capacity. It is respectfully recommended further that plaintiff's remaining claims against the remaining defendants be dismissed for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

## I.      Jurisdiction.

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II.     Background facts and plaintiff's allegations.

A Spears[2] hearing was conducted on June 18, 2013, following which, plaintiff was provided additional time to supplement his complaint. On July 12, 2012, plaintiff filed a pleading that was mistakenly docketed as a new lawsuit and assigned Case No. 2:13cv209. The mistake was corrected, and the two cases have been consolidated. (D.E. 18). On July 24, 2013, plaintiff filed a motion to amend (D.E. 20), a 2-page supplement (D.E. 21), and a 5-page supplement on a preprinted form. (D.E. 22). The following allegations were made at the hearing, or in plaintiff's original complaint (D.E. 1), his supplemental complaint opened as a new lawsuit (Case No. 2:13cv209 at D.E.1), and/or his additional supplements, (D.E. 20, 21, 22):

### A.     The encounter with Sergeant Wosockie.

On December 24, 2012, at approximately 10:30 a.m., plaintiff was working in 3-Building barbershop. (Case No. 2:13cv209, D.E.1, p 5). Sergeant Wosockie arrived at the barbershop to conduct a search, and she asked plaintiff to show her how to open a wall-mounted napkin container. Id. Sergeant Wosockie attempted to open the lock with plaintiff's personal key, and he told her that she was going to break it. Id. Sergeant Wosockie got angry with plaintiff and ordered him out of the barber shop; he complied.

---

[2] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

Id. Sergeant Wosockie continued with the search for about fifteen more minutes, and then stepped out of the barbershop and approached plaintiff. Id. at 5-6. Sergeant Wosockie pointed her finger in plaintiff's face and told him that she would have him locked up for making threats against an officer. Id. at 6. Sergeant Wosockie then left, and plaintiff returned to the barbershop where he worked a full day, until 6:20 p.m. Id.

At 6:25 p.m., plaintiff was told that he was being placed in prehearing detention ("PHD") for a disciplinary charge of assaulting an officer during shift change. (Case No. 2:13cv209, D.E.1, p 6). Plaintiff was taken to medical for a PHD physical where no injuries were noted. Id. Plaintiff was then placed in 8-Building, L-Pod, 21-Cell. Id.

### 2. *The encounter with Sergeant Castillo.*

On December 25, 2012 at approximately 1:00 a.m., plaintiff was sleeping on his bunk in his PHD cell. (Case No. 2:13cv209, D.E.1, p 2, 6). Sergeant Castillo and four to six other officers entered his cell, and three officers shined "super beam" flashlights in his eyes, but he was able to recognize Sergeant Castillo. Id. at 2, 6. Sergeant Castillo kicked plaintiff in the face with the heel of his boot and told him "that's for giving my officers trouble." Id. at 2, 6. Sergeant Castillo took plaintiff's I.D. card and threatened further harm if plaintiff reported him or the incident. Id. at 2. As he left plaintiff's cell, Sergeant Castillo stated to the officers around him: "Don't give this [expletive] nothing." Id. at 6.

At approximately 5:30 a.m., plaintiff tried to report the incident to officers working that shift, but they just laughed and gave a false name of the sergeant on duty. (Case No. 2:13cv209, D.E. 1 at p. 3). At 7:00 a.m., plaintiff reported the incident to

Sergeant West as he was passing out johnny sacks. Id. Sergeant West relayed the information to Officer Micha, and eventually, plaintiff was escorted to medical where injuries to the right side of his face were documented. Id.

Thereafter, plaintiff was returned to the PHD cell. (Case No. 2:13cv209, D.E.1, p 3). For the first three days in PHD, he was denied a mattress, sheets, and blanket, as well as a shower. Id. For five days, he did not have toilet paper and he had to use sandwich bags after defecating to clean himself. Id. He did not have soap. Id.

Plaintiff filed a Step 1 grievance on January 2, 2013 complaining about the assault and retaliatory conduct of the McConnell Unit officers, and asking that he be transferred; sometime in January 2013, he was transferred to the Conally Unit. (Case No. 2:13cv209, D.E. 1 at p. 4). Warden Monroe denied the Step 1 grievance noting that plaintiff had already been transferred as requested. Plaintiff filed a Step 2 grievance complaining that the retaliatory conduct had not been adequately investigated by officials. Id. The Office of the Inspector General denied plaintiff's Step 2 appeal. Id.

For relief, plaintiff is seeking against Sergeant Castillo:

(1) A declaration that Sergeant Castillo violated plaintiff's constitutional rights;

(2) $3,000.00 in compensatory damages for plaintiff's physical pain and mental suffering; and

(3) $3,000.00 in punitive damages.

### III.   Legal standard.

Regardless of whether a plaintiff has properly exhausted his administrative remedies, his action may be dismissed for failure to state a claim upon which relief can

be granted. 42 U.S.C. § 1997e(c)(2). "To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); see also Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995). An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief. Oliver v. Scott, 276 F.3d 736, 740 (5th Cir. 2002). The complaint must be liberally construed in favor of the prisoner and the truth of all pleaded facts must be assumed. Id.

**IV.  Discussion.**

Although plaintiff originally identified ten McConnell Unit officers and/or officials as defendants, his supplements to his complaint suggest that he has abandoned all claims against all defendants except his excessive force and retaliation claims against Sergeant Castillo in his individual capacity. However, as discussed below, even if plaintiff did not intend to abandon his claims against the other defendants, for purposes of §1915A screening he fails to state cognizable constitutional violations against those defendants, and it is respectfully recommended that his claims against them be dismissed.

### A. Eleventh Amendment bars monetary claims against individuals in official capacities.

Originally, plaintiff did not indicate in what capacity he was suing the defendants, and therefore, it is assumed he is suing them in both their official and individual capacities.

The Eleventh Amendment bars a suit for money damages against a state or state agency. Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996). An action by a citizen against a state official in his or her official capacity is, in actuality, an action against the State itself, and is therefore barred by the Eleventh Amendment. Kentucky v. Graham, 473 U.S. 159, 166 (1985). The Fifth Circuit has extended the Eleventh Amendment immunity to TDCJ-CID officers and officials acting in their official capacities. See Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities); Augilar v. TDCJ, 160 F.3d 1052, 1054 (5th Cir. 1998) (same). Thus, to the extent plaintiff is suing any defendant in his or her official capacity for money damages, those claims are barred by the Eleventh Amendment. As such, it is respectfully recommended that plaintiff's claims for money damages against all defendants in their official capacities be dismissed with prejudice as barred.

### B. Claims against McConnell Unit wardens.

Plaintiff named the McConnell Unit wardens in his original complaint but did not identify any constitutional violation. At the Spears hearing, plaintiff did not claim that

the wardens were personally involved in the violation of a constitutional right, nor did he allege a violation in his supplements to his complaint.

To state a cause of action under § 1983, a plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged. Woods v. Edwards, 51 F.3d 577, 583 (5th Cir. 1995). In addition, it is well established that a § 1983 plaintiff cannot obtain damages or injunctive relief from a policy-maker or supervisor solely on a theory of *respondeat superior*. Beattie v. Madison County School Dist., 254 F.3d 595, 600 n.2 (5th Cir. 1983) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690 (1978)). "[S]upervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." Thompson v. Upshur County, 245 F.3d 447, 459 (5th Cir. 2001) (quoting Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987). "[Section] 1983 does not give a cause of action based on the conduct of subordinates. Personal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir.), cert. denied, 464 U.S. 897 (1983). A supervisor who is not personally involved is liable under the theory of "supervisory liability" only if he has implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Thompkins, 828 F.2d at 304. "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992).

Plaintiff does not suggest that any of the wardens implemented an unconstitutional policy. To the extent plaintiff is attempting to hold the wardens liable for the allegedly unconstitutional actions of their subordinates, § 1983 prohibits such vicarious liability. Thus, it is respectfully recommended that plaintiff's claims against the wardens be dismissed with prejudice for failure to state a claim and/or as frivolous.

### C.     Excessive force.

Plaintiff claims that Sergeant Castillo and four to six officers came into his PHD cell for the express purpose of causing him physical harm because they believed he had assaulted Sergeant Wosockie.[3] He claims that, as he was lying in his bunk, Sergeant Castillo kicked him directly on the right side of his face, causing him injuries that were documented the next day. Plaintiff testified that his face was swollen and sore, with a pain level of "6" on a scale of 1 to 10, for about three to four days. He was given Motrin for his pain and swelling. He did not suffer any lasting injuries.

To state a claim for excessive force, plaintiff must show that the force was not applied in a good-faith effort to maintain or restore discipline, but was applied maliciously and sadistically to cause harm, and that the injury he suffered was more than *de minimis,* but not necessarily significant. See Hudson v. McMillian, 503 U.S. 1, 6, 10 (1992); Gomez v. Chandler, 163 F.3d 921, 923-24 (5th Cir. 1999); Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997). The factors to be considered are (1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between that

---

[3]According to plaintiff, the disciplinary charges against him concerning the alleged assault on Sergeant Wosockie were dropped because video footage confirmed there was no assault and it was also discovered that Sergeant Wosockie had falsified the paperwork concerning the charges against plaintiff. (D.E. 21, fn 2).

need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any effort made to temper the severity of a forceful response. Gomez, 163 F.3d at 923.

For purposes of § 1915A, plaintiff has clearly stated a claim of excessive force against Sergeant Castillo. Indeed, plaintiff was asleep in his bunk at the time of the force, and surrounded by officers, and posed no threat to Sergeant Castillo or any other officer. As told by plaintiff, there was no need for the force and it was employed maliciously and sadistically to cause plaintiff harm. Thus, it is respectfully recommended that the Court retain plaintiff's excessive force claim against Sergeant Castillo and that service be ordered on this defendant.

As to the other officers that entered plaintiff's cell, plaintiff does not claim that any of these individuals assaulted him or participated in the assault by holding him down. Indeed, there is no evidence to suggest that any of these officers knew that Sergeant Castillo would actually kick plaintiff in the face. In his supplements, plaintiff offers no additional details as to the John Doe officers, and instead, appears to abandon his claims against these individuals and to direct his complaints against Sergeant Castillo only. Thus, it is respectfully recommended that plaintiff's excessive force claims against the John Doe officers be dismissed.

### D. Retaliation.

Plaintiff claims that Sergeant Castillo used excessive force against him in retaliation for plaintiff allegedly assaulting Sergeant Wosockie, and that he then ordered that plaintiff be denied even the basic necessities while housed in PHD.

Retaliation is not expressly referred to in the Constitution; however, it is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights. See Perry v. Sinderman, 408 U.S. 593, 597 (1972). Retaliation is actionable "only if the retaliatory act 'is capable of deterring a person of ordinary firmness from further exercising his constitutional rights.'" Bibbs v. Early, 541 F.3d 267, 270 (5th Cir. 2008), quoting Morris v. Powell, 449 F.3d 682, 684 (5th Cir. 2006). "A prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct." Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995). The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights. Morris, 449 F.3d at 686.

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999) (citing McDonald v. Stewart, 132 F.3d 225, 231 (5th Cir. 1998). An inmate must allege more than his personal belief that he is the victim of retaliation. Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997)

(citation omitted). Mere conclusory allegations of retaliation will not withstand a summary judgment challenge. Woods, 60 F.3d at 1166. And see Garner v. Moore, ____ Fed. Appx. ____, 2013 WL 3726801 (5th Cir. Jul 17, 2013).

The problem with plaintiff's retaliation claim is that no protected activity was the alleged motivation for Sergeant Castillo's use of force. Sergeant Castillo believed, albeit mistakenly, that plaintiff had assaulted Sergeant Wosockie, and plaintiff has no constitutional right to assault a correctional officer. In this particular instance, Sergeant Castillo was not attempting to hinder or intimidate plaintiff's use of the grievance system, or adversely affect his right to complain to supervisors, or deny plaintiff access to medical care, or prevent him from practicing his religion, or hinder or deny plaintiff any other recognizable constitutional right. As such, plaintiff cannot establish that, but for the exercise of a constitutional right, Sergeant Castillo would not have assaulted him. Although plaintiff's facts establish that Sergeant Castillo acted with retaliatory intent, the motivation for Sergeant Castillo's conduct is relevant in the context of plaintiff's use of force claim as it establishes that there was no need for the application of force at the time; however, it does not, simultaneously, establish a retaliation claim as there is no underlying constitutional right at issue. Accordingly, it is respectfully recommended that plaintiff's retaliation claim be dismissed.

## V.   Recommendation.

For the reasons stated above, it is respectfully recommended that plaintiff's excessive force claim against Sergeant Castillo in his individual capacity be retained and

service ordered on this defendant. It is respectfully recommended further that plaintiff's remaining claims be dismissed with prejudice for failure to state a claim upon which relief can be granted and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

ORDERED this 9th day of August, 2013.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).