UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOSEPH BARNARD HINES, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:13-CV-120 |
| | § | |
| CASTILLO, *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

In this civil rights action, Plaintiff Joseph Barnard Hines claims that Defendant,
Sergeant Joseph Castillo, used excessive force against him on December 25, 2012,
causing him physical pain and suffering in violation of his Eighth Amendment right to be
free from cruel and unusual punishment.   Pending is Defendant Castillo's motion for
summary judgment to dismiss Plaintiff's claims on the grounds of:  (1) failure to exhaust
administrative remedies; (2) failure to state a cognizable Eighth Amendment violation;
and/or (3) qualified immunity.  (D.E. 42).  Plaintiff has filed a response in opposition to
Defendant's summary judgment motion, (D.E. 51), and a supplemental response. (D.E.
52).   Having considered the motion, affidavits and documentary evidence in support
thereof, the responses, and the record, Court grants Defendant's motion for summary
judgment, and enters final judgment dismissing Plaintiff's claims with prejudice.

## I.      Jurisdiction.

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II.     Procedural background and Plaintiff's allegations.

Plaintiff is an inmate in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID), and is currently incarcerated at the Connally Unit in Kenedy, Texas, although his complaint concerns events that occurred while he was assigned to the McConnell Unit in Beeville, Texas.

On April 26, 2013, Plaintiff filed a motion for a preliminary injunction and/or temporary restraining order (TRO) alleging that certain McConnell Unit officers and officials had conspired to assault him, and did assault him, in retaliation for his allegedly assaulting a female officer. (D.E. 1).  Plaintiff's motion was construed as a civil rights complaint pursuant to 42 U.S.C. § 1983, and on June 18, 2013, a *Spears* hearing was conducted to provide Plaintiff an opportunity to better explain his claims.  Both before and following the evidentiary hearing, certain claims and Defendants were severed and transferred and/or dismissed. (*See* D.E. 9, 24).  The Court retained only Plaintiff's claim of excessive force against Sergeant Castillo. (D.E. 24, 37).

Service was ordered on Sergeant Castillo, and on September 23, 2013, Sergeant Castillo filed his answer and raised the defense of qualified immunity. (D.E. 31).

On January 31, 2014, Sergeant Castillo filed the instant motion for summary judgment. (D.E. 42).  Following an extension of time, on March 10, 2014, Plaintiff filed

his response in opposition to Defendant's summary judgment motion (D.E. 51), and on

March 19, 2014, Plaintiff filed a supplement to his response. (D.E. 52).

### III.     Summary judgment evidence.

In support of his summary judgment motion, Sergeant Castillo offers the following

evidence:

> Ex. A:     Relevant portions of Plaintiff's TDCJ medical records, filed under seal (D.E. 44, pp. 1-102);
>
> Ex. B:     Affidavit of Vicky Crumbliss, a licensed vocational nurse employed by the University of Texas Medical Branch, Correctional Managed Care (UTMB-CMC), and assigned currently to the McConnell Unit (D.E. 42-2, pp. 1-3);
>
> Ex. C:     Relevant portions of Plaintiff's TDCJ grievance records from June 2012 through June 2013 (D.E. 42-3, pp. 1-26);
>
> Ex. D:     Affidavit of Captain Buck Taylor, investigator on Plaintiff's Use of Force claim against Sergeant Castillo (D.E. 42-4, pp. 1-3); and
>
> Ex. E:     Relevant portions of Plaintiff's TDCJ disciplinary records (D.E. 42-5, pp. 1-6).

In his summary judgment response, Plaintiff offers:

> Ex. A:     Plaintiff's affidavit made under penalty of perjury (D.E. 51, pp. 13-14);
>
> Ex. B:     Copy of Plaintiff's Step 1 grievance, Grievance No, 2013068569, dated December 30, 2012 (D.E. 51, pp. 15-17);
>
> Ex. C:     December 25, 2012 Offense Report and Hearing Record (D.E. 51, pp. 18-20);
>
> Ex. D:     UTMB-CMC Pre-Segregation Notes dated December 25, 2012 (D.E. 51, pp. 21-24 and D.E. 51-1, pp. 1-9);

3 / 19

Ex. E:        Declaration of Offender David Lorenza Joyner (D.E. 51-2, pp. 1-2); and

Ex. F:        Copy of Plaintiff's April 26, 2013 TRO motion that instigated this lawsuit (D.E. 51-3, pp. 1-8) (*see also* D.E. 1, D.E. 2).

The following facts are not in dispute:

On December 24, 2012, at approximately 7:38 p.m., Plaintiff was escorted to the McConnell Unit infirmary for a pre-segregation health evaluation.[1] (D.E. 44, pp. 79-81). No injuries, abrasions, or other complications were noted, and Plaintiff was cleared to be housed in Pre-Hearing Detention (PHD) and placed in a single-man cell. *Id.* at 77.

On December 25, 2012, at approximately 1:30 a.m., Defendant Castillo, along with other correctional officers, entered Plaintiff's PHD cell, shining flashlights in his face, and waking Plaintiff for roster count. (*See* D.E. 51 at 13-14, Hines' Aff't at ¶ 2). Sergeant Castillo "kicked" Plaintiff in the face with the heel of his boot. *Id.* Shortly thereafter, at approximately 1:36 a.m., Officer J. Barrera charged Plaintiff with a disciplinary offense for refusing to obey an order and creating a disturbance in Disciplinary Case No. 2013011396. (D.E. 42-5 at 4-5). Officer Barrera alleged that he had ordered Plaintiff to present his identification card, that Plaintiff refused to do so, and that his refusal created a disturbance during roster count. *Id.* at 4.

---

[1] In his original complaint, Plaintiff alleged that he had been falsely charged with assaulting a female officer, thus necessitating the December 24, 2012 pre-segregation physical. However, according to Plaintiff's disciplinary records, he was never charged with assaulting an officer on December 24, 2012, but he was housed in PHD on December 24, 2012. (*See* D.E. 42-5, p. 6). Plaintiff's disciplinary records reflect that, until he was charged on December 25, 2012, for failure to obey an order/creating a disturbance in Disciplinary Case No. 20130113961, he had been charged with only one other disciplinary case in the last 180 days, and that was on October 30, 2012. *Id.*

4 / 19

At shift change the next morning, Plaintiff complained to staff that Sergeant Castillo had used excessive force against him, and at approximately 8:00 a.m., Plaintiff was escorted to the McConnell Unit infirmary for a Use of Force (UOF) physical where he was seen by Vicky Crumbliss, a licensed vocational nurse. (D.E. 44, pp. 48-54). Plaintiff related to Nurse Crumbliss that he had been assaulted by Officer Castillo during the night. *Id.* Upon examination, Nurse Crumbliss noted that Plaintiff had "2 small abrasions to right cheek." *Id.* at 50. Plaintiff was alert and oriented, verbal and cooperative. *Id.* at 50-52. No swelling or bruising was noted. *Id.* Nurse Crumbliss cleaned the two abrasions on Plaintiff's right cheek. *Id.* at 50. During this evaluation, Nurse Crumbliss simultaneously performed a pre-segregation examination. (*Id.* at 76-78). Except for the two abrasions on his right cheek, Plaintiff was found to be in satisfactory condition for PHD, and he was released to security to return to PHD. *Id.* at 78.

On December 30, 2012, Plaintiff filed a Step 1 grievance, Grievance No. 2013068569, complaining that on December 25, 2012, around 1:00 a.m., Sergeant Castillo had entered his PHD cell and assaulted him. (D.E. 42-2, pp. 9-10). Plaintiff claimed that he had been asleep when Officer Castillo entered the PHD cell, kicked him in the face with the heel of his boot, and said: "That's for giving my officers trouble." *Id.* at 9. Plaintiff stated that a video recording would be available of the incident, requested that it be reviewed, and noted that David Joyner, an offender in the next cell, could testify as to what he heard. *Id.* at 9-10. In the grievance, Plaintiff requested that he be transferred off the McConnell Unit. *Id.* at 10.

In response to Plaintiff's grievance, TDCJ officials initiated a staff complaint, and Captain Buck Taylor was assigned to investigate Plaintiff's claim that Sergeant Castillo had assaulted Plaintiff. (D.E. 42-4, pp. 2-3, Taylor Aff't at ¶ 2).   Captain Taylor interviewed the parties involved, including Sergeant Castillo. *Id.*, Taylor Aff't at ¶ 2, ¶ 4. Defendant Castillo reported that Plaintiff had been unresponsive during a roster count, prompting the officers to enter his cell to check on him. *Id.,* Taylor Aff't at ¶ 4.  It was Plaintiff's unresponsiveness to the roster count that prompted Officer Barrera to file a disciplinary case against Plaintiff for failure to obey an order and causing a disturbance. (D.E. 42-5, p. 4).  Captain Taylor testified further:

> As part of my investigation, I also reviewed the surveillance camera footage of the area in question during the time in question.  Based on my knowledge of the layout of 8 building, L Pod, 12 Cell, the surveillance camera would have had a clear view of the actions that took place in front of and in [Plaintiff's] cell.  I reviewed the surveillance footage and found no evidence that Sergeant Castillo assaulted Offender Hines.  Based on the placement of cameras in 8 Building, L pod, I believe that had offender Hines' allegations been true, evidence would have been visible on the camera footage.

(D.E. 42-4, p. 3, Taylor Aff't at ¶ 5).

On January 6, 2013, a disciplinary hearing was held on Disciplinary Case No. 20130113961, in which Plaintiff was charged with failure to obey an order and causing a disturbance. (D.E. 42-5, pp. 4-5).  Plaintiff pled not guilty. *Id.* at p. 3.  The Disciplinary Hearing Officer (DHO) found Plaintiff guilty as charged, but as punishment, the DHO issued only a verbal reprimand. *Id.*

Plaintiff was transferred off the McConnell Unit, and on April 11, 2013, he received the denial of his Step 1 Grievance No. 2013068569, that was dated March 30, 2013, and signed by Warden Monroe. (D.E. 42-3, pp. 9-10).

On April 11, 2013, Plaintiff filed a Step 2 appeal of Grievance No. 2013068569. (D.E. 42-3, pp 7-8).  Plaintiff claimed that on December 24, 2012, he had been falsely accused of assaulting an officer, and on December 25, 2012, Sergeant Castillo used excessive force against him in retaliation for those false charges.  Plaintiff requested that the Office of the Inspector General (OIG) be contacted to investigate the incident.  *Id.* at 7.  Approximately two weeks later, on April 26, 2013, Plaintiff filed his TRO motion. § 1983 complaint with this Court.  (D.E. 1, D.E. 2).

On June 20, 2013, L. Richey, a Region IV grievance investigator, denied Plaintiff's Step 2 appeal stating that Plaintiff's claim had been reviewed and evaluated by the OIG and there was insufficient evidence to warrant further OIG investigation. (D.E. 42-3, p. 8).

## IV.    Summary judgment standard.

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.  In making this determination, the Court must consider the

record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).  The Court may not weigh the evidence, or evaluate the credibility of witnesses.  *Id.*  Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions).  Unauthenticated and unverified documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted."

*Caboni*, 278 F.3d at 451.  "If reasonable minds could differ as to the import of the evidence, . . . a verdict should not be directed." *Anderson*, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.* at 248.

## V.     Discussion and Analysis.

### A.     Exhaustion.

Defendant Castillo contends that he is entitled to summary judgment in his favor on the grounds that Plaintiff failed to properly exhaust his administrative remedies because he filed this lawsuit ***before*** he received the response denying his Step 2 appeal.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e, provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S. C. § 1997e(a).

The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Clifford v. Gibbs*, 298 F.3d 328, 330 (5th Cir. 2002).  Moreover, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process. *Booth v. Churner*, 532 U.S. 731, 734 (2001); *Wright v.*

*Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001).   A prisoner must complete the administrative review process in accordance with all procedural rules, including deadlines, as a precondition to bringing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 83 (2006).   Because exhaustion is an affirmative defense, inmates are not required to plead or demonstrate exhaustion in their complaints. *Jones v. Bock*, 549 U.S. 199, 215 (2007).

The TDCJ provides a two-step procedure for presenting administrative grievances. *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999) (per curiam).   The Fifth Circuit requires that both steps be completed in order to file suit in federal court.   *Johnson v. Johnson*, 385 F.3d 503, 515-16 (5th Cir. 2004). Step 1 requires the inmate to present an administrative grievance at his unit within fifteen days from the date of the complained-of incident.   *Id.*   The inmate should then receive a response from the unit official, and if unsatisfied with the response, the inmate has ten days to appeal by filing a Step 2 grievance, which is handled at the state level.   *Id.*

In this case, Plaintiff timely filed on December 30, 2012, his Step 1 grievance complaining about Sergeant Castillo's conduct.  (D.E. 42-3, pp. 9-10).   On February 11, 2012, Plaintiff was advised that grievance investigators needed an additional 40 days "for appropriate response to your grievance."  (D.E. 42-3, p. 19).  The "appropriate response" was then provided by Warden Monroe in his two-sentence response dated March 20, 2013:

> Your complaint has been noted.  There is no evidence to support your complaint that you were assaulted by Sgt. Castillo.

(D.E. 42-3, p. 10).  However, Plaintiff had been transferred off the McConnell Unit, and he did not receive a copy of the Step 1 response until April 11, 2014.  (D.E. 42-3, p. 7). That same day, Plaintiff filed his Step 2 appeal.  (D.E. 42-3, pp. 7-8).  Prison officials did not challenge the timeliness of his Step 2 appeal, and on May 16, 2013, grievance investigators informed Plaintiff that an additional 35 days were needed to investigate his Step 2 appeal.  (D.E. 42-3, p. 22).  His Step 2 appeal was rejected on June 20, 2013. (D.E. 42-3, p. 8).

Before prison officials ruled on his Step 2 appeal, on April 26, 2013, Plaintiff filed his original complaint/TRO motion. (D.E. 1, D.E. 2).  Defendant's singular complaint regarding exhaustion is that Plaintiff filed this lawsuit before his Step 2 appeal was officially denied.  However, Defendant suffered no prejudice as a result of Plaintiff filing his complaint before Plaintiff's Step 2 appeal was rejected.  In addition, it was the Court that construed Plaintiff's TRO motion as an original complaint, and Plaintiff should not be punished for the Court's decision to do so.  Finally, it is somewhat ironic that Defendant would challenge Plaintiff's exhaustion efforts when it took prison officials over three months to address Plaintiff's Step 1 grievance, and then required an additional extension of time to respond to the Step 2 appeal.  The purpose of the exhaustion requirement, to notify prison authorities of an offender's claims and allow them an opportunity to respond or address the issue first, was satisfied in this case, and the procedural irregularities on both sides negate each other.  Thus, Defendant's motion for summary judgment to dismiss Plaintiff's claims for failure to exhaust is denied.

11 / 19

## B.      Qualified Immunity.

Sergeant Castillo moves for summary judgment to dismiss Plaintiff's excessive force claim against him on the grounds that the facts of the case, taken as true as stated by Plaintiff, fail to support a cognizable constitutional violation.  In the alternative, Sergeant Castillo argues that, if force was employed, it was objectively reasonable under the specific facts of this case such that he is entitled to qualified immunity and dismissal of Plaintiff's claims.

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc).  To discharge this burden, the plaintiff must satisfy a two-prong test." *Atteberry v. Nocana Gen. Hosp.,* 430 F.3d 245, 251-52 (5th Cir. 2005).  First, the plaintiff must claim that the defendants committed a constitutional violation under current law.  *Id.* (citation omitted). Second, the plaintiff must claim that defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of.  *Id.*

While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical

12 / 19

steps is no longer mandatory. *Pearson*, 555 U.S. at 236 (receding from *Saucier v. Katz*, 533 U.S. 194 (2001)).

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *Gates v. Texas Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008).  An official need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *Michalik v. Hermann,* 422 F.3d 252, 262 (5th Cir. 2005).  The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct.  *Id.   See also Ontiveros v. City of Rosenberg,* 564 F.3d 379, 382 (5th Cir. 2009) (to avoid summary judgment on qualified immunity, a plaintiff need not present absolute proof, but must offer more than mere allegations).

### 1.    Excessive force.

In addressing prisoner claims of excessive force, federal trial courts must balance the constitutional rights of convicted prisoners with the needs of prison officials to effectively use force to maintain prison order.  *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).  The Supreme Court has held that the core judicial inquiry in excessive force cases is not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Wilkins v. Gaddy,* 559 U.S. 34, 36-37 (2010).  The *Wilkins* Court clarified that "this is not to say that the absence of serious injury is irrelevant to the

Eighth Amendment inquiry," explaining that the extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation, and may also provide some indication of the amount of force applied.[2]  *Id.*  Citing *Hudson v. McMillian,* 503 U.S. 1, 9 (1992), the *Wilkins* Court reiterated that "not every malevolent touch by a prison guard gives rise to a federal cause of action" and that "the Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* Similarly, an inmate who complains of a push or shove that causes no discernable injury "almost certainly fails to state a valid excessive force claim."  *Id.* However, an inmate "who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id.*

While *Wilkins* clarifies that the quantum of injury is not the decisive factor in an Eighth Amendment claim, court precedents are nonetheless clear that *some* injury is necessarily required.   The extent of the plaintiff's injuries may provide some indication of the amount of force applied.  *Id.*  As a reference point, a sore, bruised ear lasting for three days, was *de minimis.  See Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). Similarly spraying an inmate with a fire extinguisher after the fire was out was a *de*

---

[2] In evaluating a prisoner's claim of excessive force, some of the factors to consider are: (1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any effort made to temper the severity of a forceful response.  *Gomez v. Chandler*, 163 F.3d 921, 923-24 (5th Cir. 1999).

*minimis* use of physical force and was not repugnant to the conscience of mankind where the inmate suffered no physical injury. *Jackson v. Culbertson,* 984 F.2d 699, 700 (5th Cir. 1993). However, summary judgment was precluded where the inmate use of force injury report documented abrasions and contusions with no medical opinion as to the seriousness of those injuries. *Gomez,* 163 F.3d at 923-24.

### Step 1 – Constitutional violation.

In this case, the summary judgment evidence defeats Plaintiff's excessive force claim because, even assuming there was no need for Sergeant Castillo to place the heel of his boot on Plaintiff's face, there is no genuine issue of material fact that Plaintiff's injuries were no more than *de minimis.* Moreover, the fact that Sergeant Castillo used the heel of his boot on Plaintiff's face to wake him for count, while perhaps inappropriate and unsafe, does not "shock the conscience of mankind" or otherwise rise to the level of an Eighth Amendment violation.

In his summary judgment response, Plaintiff admits that he was asleep in his cell and relates that he did not respond to roster count on three separate occasions. (D.E. 51, p. 2). The fourth time, Sergeant Castillo, along with other officers, entered Plaintiff's cell and Sergeant Castillo kicked Plaintiff on the right side of his face. *Id.* Plaintiff reported the assault at shift change the next morning, and he was taken to medical for a UOF physical. *Id.* Nurse Crumbliss documented "two small abrasions" on Plaintiff's right cheek. (D.E. 42-2, Crumbliss Aff't at ¶ 3). Those abrasions were not present 24 hours prior when Plaintiff had his initial PHD evaluation and therefore, it is logical to assume they were caused by Sergeant Castillo. (Compare D.E. 44 at 79 to D.E. 44 at 76). Nurse

15 / 19

Crumbliss noted that Plaintiff denied any other injuries.  (D.E. 42-2, Crumbliss Aff't at ¶

3).  Nurse Crumbliss did not note any bruising or swelling, and testified that, had she

observed any, she would have noted it in Plaintiff's medical records.  *Id.*

Nurse Crumbliss testified as to the severity of Plaintiff's injuries:

> During my time serving at the McConnell unit, I have
> conducted numerous examinations of inmates after physical
> altercations, many of which involved blows or kicks to the
> facial area. Bruising and/or swelling is extremely common
> following a blow to the face.  Specifically, if a blow occurred
> eight hours prior to examination, I would expect to see the
> formation of bruise if one was present.  While a blow or kick
> can cause an abrasion or split skin, in my training,
> knowledge, and experience, this type of injury is caused by a
> blow of such force that it is accompanied by bruising and/or
> swelling.
>
> I understand Mr. Hines has claimed that his injuries
> caused him bruising that lasted for three weeks and pain rated
> at a level 6 on a scale of 1 – 10 that lasted for three days.  Had
> his injuries been to this severity, they would have been
> present and identifiable during my examination, and I would
> have noted them in the medical record.

(D.E. 42-2, pp. 2-3, Crumbliss Aff't at ¶4-¶5).  Plaintiff cites to Nurse Crumbliss'

affidavit in support of his injuries, but in fact, her affidavit refutes that his injuries are any

more than *de minimis.*  Plaintiff was seen by Nurse Crumbliss approximately seven hours

after Sergeant Castillo kicked him in the check with the heel of his boot.  He did not have

any bruising or swelling or any signs of trauma to the face.  Nurse Crumbliss noted only

two small abrasions.  Plaintiff did not require x-rays, pain medication, or even bandages.

He did not submit a Sick Call Request (SCR) the next day or later that week complaining

about pain or bruising.  While at the McConnell Unit, Plaintiff did not submit a SCR for

follow-up care of the two abrasions on his cheek or for any other condition related to the encounter with Sergeant Castillo. (*See* D.E. 44, pp. 46-54, 76-78, 79-81). On January 11, 2013, Plaintiff was seen in the McConnell Unit infirmary for chart review and he voiced no complaints or concerns. (D.E. 44, p. 6).

On February 19, 2013, Plaintiff was transferred to the Connally Unit and at his initial health screening, it was noted that he had no health problems. (D.E. 44, p. 102). However, at the Connally Unit, Plaintiff routinely submitted SCRs for the remainder of 2013, seeking medical treatment for a chronic rash, dental care, knee pain, and psychological counseling. (*See* D.E. 44, pp. 4-5, 7-14, 20-47, 55-75).

Despite Plaintiff's characterization of Sergeant Castillo's conduct as "kicking" his face, the resulting abrasions suggest that Defendant used his boot to nudge Plaintiff awake. Captain Taylor reviewed the videotape of the incident and "found no evidence that Sgt. Castillo assaulted Offender Hines." (D.E. 42-4, pp. 2-3, Taylor Aff't at ¶ 5). Captain Taylor testified that, based on his training and experience, the abrasions on Plaintiff's face were not consistent with an individual who had been "kicked" in the face. *Id.*, Taylor Aff't at ¶ 3.

The fact that Plaintiff suffered no real injury is less important if Sergeant Castillo's conduct was uncalled for or abusive, and in his original complaint, Plaintiff argued that he was simply sleeping in his bunk when he was assaulted by Sergeant Castillo. However, in his summary judgment response, Plaintiff now admits that he had ignored the roster call three times and was continuing to sleep, and it was his failure to obey count orders that prompted the officers to enter his cell and Sergeant Castillo to use

17 / 19

his boot to rouse him. The fact that Defendant Castillo used his boot on Plaintiff's face to wake him was not professional, safe, or appropriate, but, under the facts of this case, it does not amount to excessive force actionable under the Eighth Amendment. It was not "grossly disproportionate to the need for action under the circumstances." *Petta v. Rivera*, 143 F.3d 895, 902 (5th Cir. 1998) (citation omitted). At worst, Sergeant Castillo was careless or displayed an unwise excess of zeal, but it is not the type of aberrant or abusive behavior that "shocks the conscience" and that the Eighth Amendment prohibits. *See e.g. Ballard v. Gray,* 2013 WL 139360 (E.D. Tex. Jan. 10, 2013) (unpublished) (no excessive force where medication aide threw pills at prisoner's face, striking him in the eye); *White v. Holmes,* 21 F.3d 277, 279 (8th Cir. 1994) (throwing a set of keys at an inmate, followed by the officer placing her hands on the inmate's face and flailing her arms at his head, not a constitutional violation); *Moore v. Machado*, 2009 WL 4051082 (N.D. Cal. Nov. 20, 2009) (throwing a dinner tray at an inmate was not a constitutional violation); *Sardon v. Peters,* 1995 WL 609147 (N.D. Ill. Oct. 13, 1995) (throwing carton of spoiled milk on an inmate is not a constitutional violation).

With respect to the first prong of the qualified immunity analysis, the Court finds that, under the specific facts of this particular case and for the reasons discussed above, Sergeant Castillo used force in a good faith effort to maintain or restore discipline, not maliciously and sadistically to cause Plaintiff harm. There was no constitutional violation.

*Step 2: Objective reasonableness.*

On the second prong of the qualified immunity analysis, a plaintiff must show that the right was clearly established at the time of the challenged conduct. *Ashcroft v. Al-Kidd,* 131 S. Ct. 2074, 2083 (2011). However, because Plaintiff has failed to establish that Sergeant Castillo violated his Eighth Amendment rights as a matter of law, the Court need not examine whether Sergeant Castillo's actions were objectively reasonable.

## VI.   Conclusion.

Plaintiff's allegations, taken as true, fail to raise a genuine issue of a material fact as to Sergeant Castillo's actions toward Plaintiff on December 25, 2012. The force employed was not excessive, and Plaintiff suffered no more than a *de minimis* injury. Accordingly, Defendant's motion for summary judgment (D.E. 42) is GRANTED, and Plaintiff's claims are dismissed with prejudice.

ORDERED this 2nd day of July, 2014.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE